| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

### CIVIL MINUTES -- GENERAL

| | |
|---|---|
| Case No.   **CV 24-8574-JFW(JCx)** | Date:  November 21, 2024 |

Title:  Rosalba Hernandez -v- Amcor Flexibles LLC, et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**  ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [filed 10/25/2024; Docket No. 23]

On October 25, 2024, Plaintiff Rosalba Hernandez ("Plaintiff") filed a Motion to Remand.  On November 4, 2024, Defendant Amcor Flexibles LLC ("Amcor") filed its Opposition.  On November 8, 2024, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 25, 2024 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff was employed by Amcor from May 1999 until her termination on September 8, 2022.  According to Plaintiff's First Amended Complaint ("FAC"), Plaintiff suffered a work-related injury on August 1, 2022.  FAC ¶ 11.  Plaintiff was unable to complete her shift and left early.  *Id.* On August 2, 2022, Plaintiff sought medical attention for her injury, and was given a doctor's note prescribing three days off from work to recover.  *Id.* at ¶ 12.  On that same day, she alleges that she informed Defendant Paulette Perez, Manager of Human Resources, about her injury and sent Defendant Perez a photo of her doctor's note.  *Id.* at ¶¶ 3, 12.

Plaintiff alleges that, on or around August 3, 2022, Safety Manager Christian contacted her and insisted she visit a clinic designated by Amcor's insurance provider. *Id.* at ¶ 13.  Plaintiff informed Christian that she was in too much pain to drive, and Christian arranged for an Uber to transport Plaintiff to the clinic where she was again treated for her injury. *Id.*

---

[1] In light of the standard for fraudulent joinder, the Court considers the additional facts set forth in Plaintiff's declaration filed in support of her Reply.

Plaintiff claims that, on August 4, 2022, Plaintiff's supervisor, Teresa Roblero, demanded that she return to work despite Plaintiff's continuing pain and doctor's note excusing Plaintiff from work for three days. *Id.* at ¶ 15. According to Plaintiff, Ms. Roblero "threatened" that Plaintiff would not be paid if she did not report to work. Plaintiff informed Ms. Roblero that she was still in pain and that she intended to follow her doctor's advice to remain off work for three days. On August 8, 2022, Plaintiff returned to work. *Id.* at ¶ 16. However, Plaintiff alleges that she continued to experience significant pain and required daily therapy sessions as part of her treatment plan. *Id.*

According to Plaintiff's declaration submitted in support of her Reply, after she reported her injury to Defendant Perez, Ms. Roblero began following Plaintiff and micromanaging her activities. Plaintiff Decl. ¶ 6. Plaintiff asked Ms. Roblero why she was suddenly following her and micromanaging her activities, and Ms. Roblero responded that Defendant Perez had instructed her to do so after Plaintiff reported her workplace injury. *Id.* During subsequent conversations, Ms. Roblero informed Plaintiff that it appeared that Defendant Perez "had it out" for Plaintiff and informed Plaintiff that Defendant Perez had also denied Plaintiff's request for a schedule change to the morning shift in contravention of Amcor's seniority policy *Id.* at ¶¶ 7-10. Plaintiff also claims that Defendant Perez failed to investigate her work-place injury, despite being required to do so. *Id.* at ¶ 11.

According to Plaintiff, on August 26, 2022, Plaintiff began feeling sick during her shift. During a lunch break, Plaintiff informed Ms. Roblero that she was experiencing symptoms consistent with a fever. FAC ¶ 17. Plaintiff took an at-home COVID test, which indicated a positive result. Plaintiff immediately informed Ms. Perez regarding her positive test and sent her a photo of the COVID-test showing the positive result. FAC ¶ 18; Plaintiff Decl. ¶ 12. According to Plaintiff, during a telephone call later that day, Defendant Perez yelled at Plaintiff, was "rude and derogatory," and questioned the validity of Plaintiff's COVID test result. Plaintiff Dec. ¶ 13. Plaintiff alleges that Defendant Perez demanded that Plaintiff send her another positive test result, and that if Plaintiff did not send one, it would be grounds for immediate termination. Plaintiff Decl. ¶ 13.

On August 29, 2022, which was Plaintiff's next scheduled work day, Plaintiff alleges that she informed Defendant Perez that she would be unable to report to work due to her COVID-19 diagnosis. FAC ¶ 19. That same day, Plaintiff took a second COVID test and sent a photo of the positive test result to Defendant Perez. Plaintiff Decl. ¶ 14. Plaintiff claims that, during a telephone call later that day, Defendant Perez again was "rude and derogatory," questioned the validity of her COVID test result, and again threatened Plaintiff with immediate termination if Plaintiff did not provide her with yet another positive test result. *Id.* at ¶ 15. Plaintiff alleges that she advised Defendant Perez that she did not have any more COVID tests at home. FAC ¶ 19; Plaintiff Decl. ¶ 15. According to Plaintiff, Defendant Perez told Plaintiff to go to the store to buy more. Plaintiff Decl. ¶ 15. When Plaintiff explained that she was not well enough and that it was not safe for her to go out in public due to her positive test result, Defendant Perez allegedly showed a lack of concern and again threatened Plaintiff with immediate termination. FAC ¶ 20; Plaintiff Decl. ¶ 15.

After concluding the telephone conversation with Defendant Perez, Plaintiff contacted her coworker Ana Pimentel and asked her to bring her a COVID test from work. Plaintiff Decl. ¶ 16. Although Ms. Pimentel initially agreed to bring her one that day, she later informed Plaintiff she would not be able to bring her the test until the following day. *Id.* at ¶¶ 16-18. Plaintiff claims she immediately notified Defendant Perez that she would not be able re-test until the following day. *Id.* at ¶ 19. Plaintiff asserts that, in response, Defendant Perez continued to pressure Plaintiff for

another test result and informed her that unless she immediately provided a third positive test result, she would be terminated. *Id.* at ¶¶ 20-21.

Plaintiff claims that, in total, Defendant Perez called her approximately five times on August 29, 2022. *Id.* at ¶ 21.  During each of those conversations, Plaintiff claims that Defendant Perez yelled at her, spoke to her in a rude way, and demanded that she provide a third positive COVID test immediately or face termination.  *Id.* Plaintiff felt all of these conversations were "very hostile, threatening, and abusive."*Id.*

Because she was fearful of losing her job, Plaintiff alleges that, on August 29, 2022, she sent Defendant Perez a stock photo of a positive test result. FAC ¶ 21; Plaintiff Decl. ¶¶ 22-23.

According to Plaintiff, on August 30, 2022, Plaintiff obtained another COVID test kit from Ms. Pimentel and again tested positive for COVID.  She provided Defendant Perez a photo of this legitimate COVID positive test result. FAC ¶ 22; Plaintiff Decl. ¶ 24. Later that afternoon, Plaintiff visited the doctor's office. The doctor provided Plaintiff with a note excusing her from work from August 30, 2022 through September 1, 2022 due to her ongoing COVID symptoms. FAC ¶ 23; Plaintiff Decl. ¶ 25.

According to Plaintiff, between August 26 through 30, 2022, she spoke with Defendant Perez approximately ten times on the phone. During each of these conversations, Plaintiff claims that Defendant Perez yelled at her and raised her voice, spoke to her in a rude and abusive fashion, questioned the validity of her positive COVID test results, and continually threatened her with immediate termination if she did not keep providing her additional positive test results. Plaintiff felt that the conversations were very hostile, threatening, and abusive. Plaintiff Decl. ¶ 26.

Plaintiff claims that, on or around September 7, 2022 she informed Safety Manager Christian that she would not be reporting to work because she had been involved in a car accident, was injured, and needed to seek medical treatment for her injury. FAC ¶ 25.

On or around September 8, 2022, Plaintiff was terminated. FAC ¶ 26; Decl. Plaintiff ¶ 27. Although Defendants claimed that they were terminating Plaintiff due to a falsified COVID-19 test result, Plaintiff alleges that "the true reason Defendants terminated Plaintiff's employment was due to the fact that she had suffered and reported a number of injuries and illnesses, including a work-related injury, in the prior two months and had requested reasonable accommodations in connection therewith." FAC ¶ 26.

In her First Amended Complaint filed on October 25, 2024, Plaintiff alleges the following claims for relief: (1) disability discrimination in violation of Cal. Gov. Code § 12940, *et seq.*; (2) failure to provide reasonable accommodations in violation of Cal. Gov. Code § 12940, *et seq.*; (3) failure to engage in good faith interactive process in violation of Cal. Gov. Code § 12940, *et seq.*; (4) harassment/hostile work environment in violation of Cal. Gov. Code § 12940, *et seq.*; (5) failure to prevent harassment/hostile work environment in violation of Cal. Gov. Code § 12940, *et seq.*; (6) retaliation in violation of Cal. Gov. Code § 12940, *et seq.*; (7) retaliation for using sick leave in violation of Cal. Labor Code §§ 233, 245.6, *et seq.*; (8) retaliation in violation of Cal. Labor Code § 6310; (9) whistleblowing retaliation in violation of Cal. Labor Code § 1102.5; and (10) wrongful termination in violation of public policy.  The only claims alleged against Defendant Perez are harassment/hostile work environment in violation of Cal. Gov. Code § 12940, *et seq.*; retaliation in

violation of Cal. Labor Code § 6310; and whistleblowing retaliation in violation of Cal. Labor Code § 1102.5.

On October 4, 2024, Defendant Amcor filed a Notice of Removal, alleging that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and, in relevant part, that Defendant Perez was fraudulently joined. Plaintiff moves to remand this action to Los Angeles County Superior Court, arguing in relevant part that this Court lacks diversity jurisdiction because: (1) both she and Defendant Perez are citizens of California; and (2) Defendant Perez was not fraudulently joined.

## II.   LEGAL STANDARD

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## III.   DISCUSSION

Diversity jurisdiction founded under 28 U.S.C. § 1332(a) requires that (1) all plaintiffs be of different citizenship than all defendants, and (2) the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332. Because Defendants have not met their burden of demonstrating that the parties are completely diverse, this Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

It is undisputed that both Plaintiff and Defendant Perez are citizens of California. Defendant Amcor, however, argues that Defendant Perez has been fraudulently joined, and, thus, that her presence in this action should be ignored. "Although an action may be removed to federal court only where there is complete diversity of citizenship, . . . one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotations and citations omitted). If the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the *settled* rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (emphasis added). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Indeed, "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical*

*Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). A claim of fraudulent joinder should be denied if there is *any possibility* that the plaintiffs may prevail on the cause of action against the in state defendant. *See Plute*, 141 F. Supp. 2d at 1008. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a *possibility* that they may do so." *Lieberman v. Meshkin, Mazandarani*, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996) (emphasis added). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute*, 141 F. Supp. 2d at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). Moreover, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *See id.*

The Court concludes that Amcor has not carried its burden of demonstrating fraudulent joinder. Amcor contends in relevant part that Defendant Perez has been fraudulently joined because Plaintiff has failed to state a claim for harassment based on Defendant Perez's alleged conduct. Amcor's arguments are not sufficient to support removal on the basis of fraudulent joinder.

Under FEHA, it is unlawful for an employer or an individual employee to harass another employee based on her medical conditions. Cal. Gov't Code § 12940(j). "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009) (citations and internal quotation marks omitted). Harassment is "generally concerned with the message conveyed to an employee, and therefore with the social environment of the workplace, whereas discrimination is concerned with explicit changes in the terms or conditions of employment." *Id.* "[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Reno v. Baird*, 18 Cal. 4th 640, 646-47 1998). Personnel management conduct, however, may evidence harassment if it has the "secondary effect of communicating a hostile message." *Roby*, 47 Cal. 4th at 708-09. Unlike a discrimination claim, for which only an employer may be liable, an individual employee may be liable for workplace harassment (in addition to the employer)." *Ramirez v. Speltz*, 2015 WL 5882065, at *3 (N.D. Cal. Oct, 8, 2015).

For harassment to be actionable, "it must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Aguilar v. Avis Rent A Car Sys.*, Inc., 21 Cal. 4th 121, 130 (1999) (*quoting Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). However, "[i]n 2019, the California Legislature clarified that '[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive environment.'" *Vazquez v. Costco Wholesale Corp.*, 2021 WL 1784342, at *3 (C.D. Cal. May 5, 2021 (quoting Cal. Gov't Code § 12923(b)).

The Court cannot conclude, as a matter of law, that Plaintiff has no possibility of stating a

claim for harassment against Defendant Perez. In her First Amended Complaint and her declaration filed in support of her Reply, Plaintiff alleges several actions that, taken together, suggest a possibility that Defendant Perez engaged in harassing conduct toward Plaintiff based on her medical condition, including yelling at her, speaking to her in a rude and derogatory fashion, repeatedly and unreasonably demanding additional COVID test results, threatening her with termination, requesting that Plaintiff's supervisor follow her and micromanage her activities, and denying her request for a schedule change against Amcor's seniority policy. In any event, it is unnecessary for the Court to determine whether these allegations state a claim for harassment. As the court stated in *Stanbrough v. Georgia-Pacific Gypsum LLC*, 2009 WL 137036 (C.D. Cal. Jan. 20, 2009):

> But even if the Court presumes for purposes of discussion that the complaint does not allege sufficient facts to meet this requirement [of pervasive harassment] as to [the supervisor], Defendants have failed to demonstrate fraudulent joinder. . . . Defendants must demonstrate that Plaintiffs could not possibly state a claim against [the supervisor] in state court. Even if the allegations in Plaintiffs' complaint are insufficient to withstand a demurrer in state court, an issue as to which the Court offers no opinion, Defendants have not sufficiently established that Plaintiffs could not amend their complaint and add additional allegations to correct any deficiencies. In other words, the complaint's shortcomings, if any, are strictly factual; Plaintiffs clearly may pursue a cause of action for harassment against [the supervisor] under section 12940(j)(3) of the California Government Code if they can allege sufficient facts.

*Id.* at *2. Indeed, even if Plaintiff's First Amended Complaint (and the additional allegations in her declaration) fail to allege sufficient facts to plead a viable harassment claim against Defendant Perez, Amcor has failed to show that Plaintiff will be unable to amend her First Amended Complaint to add allegations or facts supporting her claims, including, for example, setting forth the exact "derogatory" comments made during Plaintiff's conversations with Defendant Perez. "Parties may not expand federal jurisdiction beyond its statutory boundaries by using fraudulent joinder-based removal as a replacement for a state court demurrer." *Lizari v. CVS Pharmacy Inc.*, 2011 WL 223806, at *3 (C.D. Cal. Jan. 20, 2011)*.*

Accordingly, the Court concludes that Defendant Perez was not fraudulently joined. Thus, this Court lacks diversity jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**, and this action is **REMANDED** to Los Angeles County Superior Court. Plaintiff's Request for Attorney's Fees in the amount of $19,515.00 is **DENIED**.

IT IS SO ORDERED.